**FOOD BASKET, INC., a Utah corporation, Plaintiff-Appellant,**

v.

**ALBERTSON'S, INC., a Nevada corporation, Defendant-Appellee.**

No. 239–68.

United States Court of Appeals
Tenth Circuit.

Oct. 15, 1969.

Stephen C. Ward, Salt Lake City, Utah (Robert W. Hughes, Salt Lake City, Utah, Joseph L. Alioto and Maxwell Blecher, San Francisco, Cal., of counsel, on the brief), for appellant.

Richard W. Giauque, Salt Lake City, Utah (Dennis McCarthy, Roger H. Thompson and Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, Utah, on the brief), for appellee.

Before PHILLIPS, BREITENSTEIN and HICKEY, Circuit Judges.

ORIE L. PHILLIPS, Circuit Judge.

On December 9, 1964, Food Basket, Inc., a Utah corporation,[1] commenced this action against Albertson's, Inc., a Nevada corporation,[2] to recover treble damages for alleged violations of the Clayton Act, as amended by the Robinson-Patman Act (15 U.S.C.A. § 13(a) and (f)).

In addition to the allegations respecting violations of the Clayton Act, as amended, it was further alleged in paragraph 6 of the complaint, as follows:

"6. Beginning in December 1963 and continuing up until July, 1964, the defendant was engaged in a plan and policy to restrain unreasonably the above-described interstate trade and commerce in food products by offering for sale in their Taylorsville market (the area in which plaintiff operated its only retail food market) selected food products at prices lower than the prices which defendant charged for like food products in the other stores in its Salt Lake City,

1. Hereinafter referred to as the plaintiff.

2. Hereinafter referred to as the defendant.

Utah area, for the purpose of destroying and with the intent to destroy plaintiff's business and to acquire for itself a monopoly in the Taylorsville, Utah area, all in violation of 15 U.S.C., Sections 2 and 13(a) and (f)."

After interrogatories and answers thereto had been filed, inspection of documents had been made, and a deposition had been taken by the defendant and filed, a motion for summary judgment, supported by affidavits, was filed by the defendant.

"On the basis of the complaint, supporting discovery and statement of counsel, the [trial] court concluded that the discriminatory purchases complained of were not 'in commerce' so as to come within the scope of the Robinson-Patman Act and granted" the motion for "summary judgment for lack of subject matter jurisdiction. It also dismissed the action insofar as it was based on Section 2 of the Sherman Act ' * * * for failure to state a claim upon which relief can be granted and for failure to disclose to the court a reasonable factual basis for such claim, * * * ' " (see Food Basket, Inc. v. Albertson's, Inc., 10 Cir., 383 F.2d 785, 786) and granted the motion for summary judgment.

On December 6, 1965, the court entered a summary judgment for the defendant on the Robinson-Patman Act claims, dismissed the action as to them with prejudice, and dismissed the action insofar as it was based on the Sherman Act.

To a motion to reconsider, filed on December 17, 1965, plaintiff attached two amendments to the complaint. One of the amendments related to the Sherman Act claim, but the motion itself was directed solely to the Robinson-Patman Act claims and did not refer to the Sherman Act claim.[3] Such motion was denied on January 4, 1966, and on the same day the

plaintiff filed a notice of appeal from the summary judgment.

On appeal, this court affirmed the judgment as to the Robinson-Patman Act claims on the ground that the complaint failed to allege that any of the discriminatory sales were "in commerce" as that term is defined in such Act.

With respect to the amendments attached to the motion to reconsider, this court said they did not allege that any of the alleged discriminatory sales were "in commerce." (See 383 F.2d 785 at 787.)

However, this court differed with the trial court as to the Sherman Act claim. In its opinion it said:

"Liberally construing the pleadings, we cannot say that they failed to state a claim upon which relief can be granted under Section 2 of the Sherman Act. Nor can we say that a reasonable factual basis for such claim was not disclosed. The summary judgment based upon the claim of violation of Section 2(a) and (f) of the Robinson-Patman Act is accordingly sustained. Judgment on Section 2 of the Sherman Act is vacated and the case is remanded to allow amendment to the pleadings and proof in support thereof." (See 383 F.2d 785 at 788, 789.)

It is obvious that while this court regarded the allegation of the Sherman Act violation as sufficient to withstand the motion for summary judgment, it was of the opinion that to be well pleaded such claim needed perfecting amendments, and remanded the case with instructions "to allow amendment to the pleadings" to support that claim. (See 383 F.2d 785 at 789.) We think it plainly appears that such amendment was necessary.

The opinion of this court on the first appeal was filed on October 13, 1967. The mandate was issued in due course, and on February 21, 1968, the matter

3. While on December 3, 1965, counsel for plaintiff asked leave to amend the complaint, on the ground that discovery would disclose new facts that would support such an amendment, he clearly did not ask leave to file the attached amendment

relating to the Sherman Act claim, and did not ask leave, except by possible implication, to file the attached amendment relating to the Robinson-Patman Act claims.

came on for hearing respecting the filing of the mandate. Counsel for the defendant appeared, but counsel for the plaintiff did not appear. The mandate was duly filed.

On April 25, 1968, counsel for the plaintiff forwarded a letter to counsel for the defendant, requesting that certain invoices be furnished to counsel for the plaintiff. Counsel for the plaintiff had been permitted to examine such invoices on December 2, 1965. Counsel for the defendant made no reply to such letter. Nevertheless, counsel for the plaintiff took no court action by way of discovery or otherwise to obtain leave to examine such invoices. Indeed, from the time the mandate was filed on February 21, 1968, down to the call of the calendar for the setting of cases on October 1, 1968, counsel for the plaintiff neither filed nor asked leave to file any amendments with respect to the Sherman Act claim, nor in any other way took any court action in the case to bring it to readiness for trial and disposition. That, in the face of the fact that in the motion to reconsider, counsel for the plaintiff stated it had not yet completed the securing of information by discovery, due to its own negligence.

At the call of the calendar on October 1, 1968, the trial judge expressed astonishment that counsel for the plaintiff had not filed an amended complaint nor taken any other court action in the case. Counsel for the plaintiff gave as an excuse the failure of counsel for the defendant to respond to the letter of April 25, 1968,[4] and the fact that in the spring of 1968 he was involved in the trial of a case in Nevada, which lasted nine weeks.

The failure of counsel for the defendant to answer the letter should have spurred counsel for the plaintiff to seek the desired information by discovery or other means, if, in fact, such invoices were not open for his inspection at the office of counsel for the defendant. Certainly, the fact of the engagement of counsel for the plaintiff for nine weeks in a trial in Nevada left ample time for him to prepare an amendment to the complaint, complete discovery proceedings, and get ready to try the case. Moreover, while he was the principal counsel for the plaintiff in the case, he had co-counsel in the case from the time the original complaint was filed up to and including the time the calendar was called. The trial court, deeming the explanation for the long delay by counsel for the plaintiff to take any action in the case, to make any diligent effort to amend the complaint, and otherwise get the case ready for trial was without substance, indicated that if counsel for the defendant would move for dismissal for want of diligent prosecution he would sustain the motion. Counsel for the defendant then so moved and the court sustained the motion.

■ Rule 41(b) of the Federal Rules of Civil Procedure provides that a defendant may move for dismissal of an action for failure of the plaintiff to prosecute.

The granting of such a motion is within the sound discretion of the trial judge, and his decision should be sustained, absent the abuse of discretion.[5]

■ Here, there was a long delay, during which counsel for the plaintiff took absolutely no action to amend the complaint or otherwise get the case ready for trial, and no reasonable explanation or excuse for such inaction was given by counsel for the plaintiff.

Between December 28, 1964, and October 12, 1965, counsel for the defendant had propounded interrogatories and ob-

---

4. Counsel for the defendant explained that such invoices were in their office and open to inspection by counsel for the plaintiff at the time the letter was written and at all times thereafter.

5. Link v. Wabash Railroad Co., 370 U.S. 626, 633, 82 S.Ct. 1386, 8 L.Ed.2d 734;

Davis v. Operation Amigo, Inc., 10 Cir., 378 F.2d 101, 103;
Shotkin v. Westinghouse Electric & Mfg. Co., 10 Cir., 169 F.2d 825, 826;
Sweeney v. Anderson, 10 Cir., 129 F.2d 756, 758.

tained answers thereto, had taken a deposition, and fully prepared for defense of the action. They in no way caused the inaction on the part of the plaintiff or its counsel.

We agree with the trial court that there was inexcusable failure by plaintiff to prosecute the case with reasonable diligence, and we hold that the trial court did not abuse its discretion in dismissing the action.

Affirmed.